(Not for Publication)                                    (Docket Entry No. 23)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| EDWARD J. HILINSKI, | : | |
| | : | |
| Plaintiff, | : | Civil No. 03-3549 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN E. POTTER, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

Presently before the Court is Defendant John E. Potter's Motion for Summary Judgment on all claims in Plaintiff Edward Hilinski's Complaint.  For the reasons that follow, the Court will grant Defendant's motion.

**I.  BACKGROUND**

Plaintiff Edward Hilinski ("Hilinski") is a former employee of the United States Postal Service.  Hilinski filed the Complaint in this matter against Defendant John E. Potter, Postmaster General of the United States, alleging that the United States Postal Service ("USPS") unlawfully discriminated against Hilinski during his employment with the USPS.

**A.  Plaintiff's Early Work History**

Hilinski began working at the USPS in 1971 as an accounting technician at the Eastern

1

Region Office, located at 1845 Walnut Street, Philadelphia, Pennsylvania. (Hilinski Dep. at 16:8 to 16:16.)  Between the years of 1971 and 1992, Hilinski received various promotions within the USPS. (Id. at 17:13 to 18:5.)  During that twenty year time period, Hilinski was happy with the USPS and did not receive any disciplinary action. (Id. at 17:18 to 18:5.)

In 1992, after a downsizing and reorganization of the USPS, Hilinski accepted the position of "Manager, Consumer Affairs" at the 30th Street Post Office in Philadelphia. (Id. at 18:18 to 20:12.).  As the Consumer Affairs Manager, Hilinski was responsible for supervising approximately six employees who handled customer complaints relating to two zip code areas in Philadelphia. (Id. at 23:1 to 23:8.)  Upon becoming the Consumer Affairs Manager, Hilinski retained his salary, benefits, and Level 23 status from his prior position even though the Consumer Affairs position was actually a lower level position. (Hilinski Dep. at 25:12 to 26:11.)  At the time of Hilinski's transition to Consumer Affairs, Kirby Cooper served as Hilinski's direct supervisor. (Id. at 28:14 to 28:16.)

A few years later, Hilinski requested and received two temporary assignments within the USPS, after he complained that the stress from his Consumer Affairs post was "overbearing." (See id. at 39:3 to 39:6.)  First, in 1995, Hilinski obtained a temporary assignment to the Finance Department in the 30th Street Post Office.  Although such temporary assignments usually only lasted for three months, Ms. Cooper permitted Hilinski to continue his temporary assignment for an additional two months beyond the initial three month period. (Id. at 40:20 to 40:21.)  Second, in 1996, Hilinski again requested and received a temporary assignment; however, the second temporary position was not located within the 30th Street Post Office. (Id. at 45:8.)  Nevertheless, Ms. Cooper agreed to extend the placement for an additional month beyond the

2

original three month period  (Hilinski Dep. at 46:23 to 47:7.)  Moreover, Hilinski received his

full salary and benefits during the months he was in both temporary assignments. (<u>Id.</u> at 47:8 to

47:23.)

Following the 1996 temporary assignment, Hilinski returned to Consumer Affairs in the

30th Street Post Office and received counseling through the USPS Employee Assistance Program

("EAP") to help him "cope with the stressors" of his job. (<u>See id.</u> at 50:2 to 50:4.)  Hilinski

attended three counseling sessions with a psychologist; however, he chose not to schedule any

further sessions because he did not feel he was benefitting from the counseling. (<u>Id.</u> at 53:11 to

53:15.)  From 1992 until mid-May 1997, Hilinski did not seek treatment from any other mental

health care professional. (<u>Id.</u> at 53:21 to 54:8.)

**B.  The May 7, 1997 Incident and Plaintiff's Leave of Absence**

On May 7, 1997, Hilinski met with an Equal Employment Opportunity ("EEO")

counselor.  At that meeting, the EEO counselor advised Hilinski that one of his employees had

filed a complaint against him alleging that Hilinski showed "favoritism" in assigning work.

(Hilinski Dep. 60:11 to 62:9.)  Upon hearing about the complaint, Hilinski became very upset,

told the EEO counselor that he was not going to participate in the matter, and returned to his

office. (<u>Id.</u> at 62:24 to 63:2.)  Ms. Cooper was not present at this meeting; however, she deposed

that shortly after Hilinski left the meeting, the EEO counselor "burst" into Cooper's office and

asked Cooper to contact the postal security force because she feared that Hilinski was a danger to

himself. (Cooper Dep. at 44:10 to 44:15.)  In particular, Cooper deposed that the EEO

investigator expressed concern because Hilinski told the investigator that "well, you'll just have

to read – maybe you'll read about me – see me on the news tonight." (<u>Id.</u> at 47:12 to 47:21.)

3

Meanwhile, upon returning to his office after leaving his meeting with the EEO investigator, Hilinski experienced dizziness, shortness of breath, and chest pains. (Hilinski Dep. 63:2 to 63:4.)  As a result, Hilinski took himself to the medical unit where the attending physician measured Hilinski's blood pressure.  Because Hilinski's blood pressure was high, the physician advised Hilinski that he should go directly to a hospital emergency room; however, Hilinski insisted on calling his personal physician first. (Id. at 66:6 to 66:15.)  Hilinski's physician, Dr. Roberto Panis, advised him that if his blood pressure did not stabilize within a half an hour, Hilinski should go to the emergency room at the hospital where Panis was on staff. (Id. at 66:25 to 67:6.)  Hilinski stayed in the medical unit for a short period until his blood pressure stabilized, and upon his departure, the medical staff advised him to go see his physician immediately. (Id. at  67:23 to 68:3.)  Hilinski left the medical unit to go back to his office to collect his personal belongings before heading to the hospital. (Id. at 68:24 to 69:1.)

As Hilinski approached the entry point into the administrative offices, he was met by four postal police who informed Hilinski that there was "an APB" out for him because Ms. Cooper requested that he be detained by the medical unit under suicide watch. (Hilinski Dep. at 69:6 to 69:18.) The postal police then escorted Hilinski back to the medical unit where a doctor and an EAP counselor talked with Hilinski and determined that he was not a threat to himself or others. (Id.) Thereafter, the postal police and an EAP counselor escorted Hilinski back to his office so that he could collect his personal items and then they escorted him to the front door. (Id. at 70:7 to 69:14.)  From there, the EAP counselor drove Hilinski to Dr. Panis' office. (Id. at 70:13 to 70:18.)

Following the May 7, 1997 incident, Hilinski did not return to work for approximately

4

eleven months. The USPS allowed Hilinski to use his annual leave and sick leave during this period, and the USPS also continued to provide Hilinski with his full salary and benefits throughout the entire leave period. (See id. at 81:22 to 82: 15.)

While he was out on leave, Hilinski sought treatment from clinical psychologist, Bruce Fechnay, Ph.D, and psychiatrist, Roy Fitzgerald, M.D. (Hilinski Dep. at 83: 10 to 83:14.)  During that time, Hilinski received treatment for post traumatic stress disorder, acute stress disorder, and generalized anxiety disorder. (Id. at 84:20 to 84:25.)  Hilinski deposed that, during his eleven month absence from work, he was irritable and confrontational. (Id. at 87:12.) He also had trouble sleeping at night and diminished coping skills. (Id. at 86:24 to 87:4.)  In addition, Hilinski felt he could not perform basic tasks relating to his finances, including writing a check, using an ATM machine, or keeping track of any money he carried on his person. (Id. at 87:5 to 87:9.) Nonetheless, when asked what activities he performed during his leave of absence, Hilinski deposed that he was able to travel to the beach for leisure. (Hilinski Dep. at 89:14.)

### C.  Plaintiff's Return to Work at the USPS

In April 1998, Hilinski returned to work at the USPS; however, the terms of his employment were limited by certain medical restrictions. (Id. at 90:3 to 90:8.)  According to his psychiatrist, Hilinski could not work at the 30th Street Post Office and he could not work in a supervisory capacity. (Letters from Roy Fitzgerald, M.D. dated 12/3/98 and 1/20/99, at Pl. Exhibits E and F.)  Therefore, Hilinski could not return to his position as Manager of Consumer Affairs because that job required working in a supervisory capacity in the 30th Street location. (Cooper Dep. 66 to 67.)

To accommodate these restrictions, the USPS placed Hilinski in a temporary, non-

supervisory assignment in the Finance Department in the Darby, Pennsylvania Post Office. (See Hilinski Dep. 93:24 to 94:5.)  Hilinski understood that this assignment would only last until December 1998. (Id. at 91:7 to 91:19, 93:7 to 93:9.)  However, during the months that Hilinski worked in this temporary detail, he received his full salary and benefits. (See id. at 95:13 to 95:21.)

While he was working in Darby, Hilinski applied for three permanent positions within the USPS.  In June 1998, he applied and interviewed for the position of Budget and Financial Analyst at the South Jersey district, but he was not selected for the position. (Id. at 96:13 to 102:3.)  That same year, Hilinski applied for the position of Diversity Development Specialist in the Headquarters Office in Washington, D.C., but was not asked to interview. (Id. at 102:18 to 103:1.) Shortly thereafter, Hilinski again interviewed for the same position in Washington, D.C., but at a lower level, and he again was not asked to interview. (Hilinski Dep. at 104:4 to 104:17.)

### D.  Plaintiff's Disability Retirement

At the end of his temporary assignment in Darby, Hilinski applied for disability retirement in January 1999. (Id. at 109:11 to 109:16.)  As Hilinski's temporary detail at the Darby office came to an end, the USPS provided Hilinski with various options regarding his future employment, because it seemed clear that Hilinski would not return to his prior permanent position at the 30th Street office.  These options included (1) taking leave without pay, (2) accepting a re-assignment to an available lower grade or craft position in Philadelphia, or (3) applying for disability retirement. (Id. at 108: 10 to 108:109:13.)  Hilinski deposed that he applied for disability retirement because he felt he "didn't have any alternative." (Id. at 109:9.).

During the processing of Hilinski's disability retirement application, the USPS agreed to

place Hilinski in another temporary, non-supervisory placement at the Philadelphia Bulk Mail Center ("BMC") to ensure that Hilinski would continue to receive his full salary and benefits until his retirement. (Id. at 108:6 to 108:9, 110:21 to 111:14.)  As a result, upon applying for disability retirement in January 1999, Hilinski transferred from the temporary placement in Darby to the temporary placement at the BMC, without any loss or interruption of salary or benefits. (Hilinski Dep. at 109:24 to 110:7.)

Hilinski's application for disability benefits was approved with an effective date of September 10, 1999. (See id. at 123:3 to 123:7.)  Hilinski reported to work on September 10, 1999 with the understanding that it would be his last day of work with the USPS. (Id. at 117:19 to 118:4.)  However, upon his arrival, Hilinski encountered a personnel clerk who informed him that he had to leave the building immediately because his disability retirement became effective on September 9, 1999, rather than September 10, 1999. (Id. at 118:5 to 118:14.)  The personnel clerk told Hilinski that both her supervisor, Diane Scott, and Ms. Cooper directed the clerk to go to the BMC and inform Hilinski that his retirement had become effective the day before. (Id. at 118:10 to 118:14.)  Hilinski became very upset and agitated. (Hilinski Dep. at 119:2, 123:20 to 124:13, 124:25 to 125:2.)  Because September 10, 1999 was the last day of the fiscal year, Hilinski expressed concern that if he left work before the end of the day, he would be denied his expected yearly bonus. (Id. at 119:4 to 119:10.)  Hilinski deposed that when he refused to leave, Diane Scott called him and told him that if he did not leave the premises she would have the postal police escort him from the building. (Id. at 119:19 to 119:25).  However, after consultation with Dewitt Harris and the district manager at the BMC, Hilinski received word that he could stay at work for the full day on September 10, 1999. (Id. at 122:1 to 122:11, 122:19 to 122:21.)

7

In addition, Hilinski's disability retirement, in fact, became effective September 10, 1999 without causing Hilinski any loss of bonuses or benefits to which he was entitled. (Id. at 123:3 to 123:11.)

### E.  EEOC Proceedings

On September 10, 1999, Hilinski contacted an EEO counselor and alleged that the USPS had discriminated against him on the basis of race, sex, age, and mental disability. (See EEO Counselor's Inquiry Report, at Pl. Exhibit G.)  On December 22, 1999, Hilinski filed a formal EEOC Complaint which likewise contained allegations of race, sex, age, and disability discrimination. (See EEOC Complaint of Discrimination, at Def. Exhibit H.)  The EEOC Complaint specified that the alleged acts of discrimination occurred between "Mid 1993 - September 10, 1999." (Id.)  In particular, the alleged acts of discrimination in the EEOC Complaint included (1) USPS' delayed processing of Hilinski's disability retirement application; (2) the events of September 10, 1999, when the USPS threatened to have the postal police remove Hilinski from the building because his disability retirement had become effective the day before; (3) the non-selection of Hilinski for positions with the USPS in 1998; (4) the public escort of Hilinski on May 7, 1997; and (5) the reversal of Hilinski's managerial decisions by upper management since mid-1993. (Id.)

On April 12, 2001, Administrative Law Judge Lystra A. Harris ("ALJ") dismissed some of Hilinski's claims as untimely. (See Order of Partial Dismissal, dated 4/12/01, at Def. Exhibit I.)  In particular, the ALJ dismissed Hilinski's claims relating to (1) the reversal of his managerial decisions since mid-1993, (2) the public escort of Hilinski in May 1997, and (3) the USPS' failure to select Hilinski for certain positions in 1998. (Id.)  The ALJ noted that the EEOC

regulations require that any aggrieved person must initiate contact with an EEO counselor within 45 days of the date of the alleged discriminatory matter. (Id.)  Because Hilinski first sought EEO counseling on September 10, 1999, the allegations regarding discrimination occurring in 1993, 1997, or 1998 were not raised in a timely fashion.  Moreover, the ALJ found that the events occurring in 1993-1997, and 1998 were dissimilar and isolated from the incidents which Hilinski timely raised in his September 10, 1999 EEO counseling. (Id.) Therefore, the allegations regarding discrimination in 1993, 1997, and 1998 could not be considered part of a continuing violation claim. (Id.)

Following the Order of Partial Dismissal, only two claims remained.  Those two claims included Hilinski's allegations that he was discriminated against on the basis of his race, sex, age and mental disability during both (1) the processing of his disability retirement claim by the USPS from January 1999 to September 1999, and (2) the series of events that took place on September 10, 1999.[1] (See Order of Partial Dismissal, dated 4/12/01, at Def. Exhibit I.)

In his Prehearing Statement, Hilinski then attempted to amend his Complaint to add a new claim that the USPS discriminated against him by failing to provide him with a reasonable accommodation from 1995 to 1999.  However, in the Prehearing Conference Order dated June 28, 2001, the ALJ denied Hilinski's request to add the new claim. (See Prehearing Conference Order dated 6/28/01, at Pl. Exhibit J.)  Specifically, the Order provided that if Hilinski wanted to pursue his new claim regarding denial of a reasonable accommodation during the period from

---

[1] In the Order of Partial Dismissal, the ALJ made clear that Hilinski's allegations regarding the USPS' attempted denial of his yearly bonus and the threat of his physical removal from the workplace would be addressed as part of the claim relating to the events of September 10, 1999, rather than as separate issues.

9

1995 to 1999, he would first have to seek EEO counseling as to that claim.  Furthermore, the

ALJ ordered that the date of Hilinski's Prehearing Statement would be the date used for time

computation purposes to determine whether any subsequent EEO counseling with respect to

Hilinski's reasonable accommodation claim was timely under 29 C.F.R. § 1614.105(b). (Id.)  In

other words, Hilinski had 45 days from the date of his Prehearing Statement to seek EEO

counseling as to his claim that the Defendant failed to provide him a reasonable accommodation

from 1995 to 1999.  There is no evidence in the record demonstrating that Hilinski followed the

ALJ's directives and sought any EEO counseling regarding his reasonable accommodation claim.

After a hearing on the EEOC Complaint, the ALJ issued a bench decision wherein she

found that Hilinski did not establish any valid discrimination claims. (See Bench Decision, dated

8/28/01, at Pl. Exhibit K.)  First, the ALJ found that although "it was undisputed" that Hilinski

was a member of a protected class for purposes of his race, age, and sex discrimination claims,

he had not proffered any evidence to show that other employees outside the class(es) received

more favorable treatment with regard to detail assignments, processing of disability retirement

application, or notification of an effective disability retirement date. (Id. at 137.)

Second, the ALJ found that Hilinski had not established that he was an individual with a

substantially limiting disability under the Rehabilitation Act.  The ALJ noted that although

Hilinski demonstrated that his mental condition affected his ability to work as a Manager of

Consumer Affairs at the 30th Street Office, the "inability, however, to perform the functions of a

particular position does not constitute a substantially limiting impairment of the ability to

perform the major life activity of working." (Id. at 139.)   In other words, because Hilinski did

not show that he was an individual with a disability as defined by the EEOC's regulations, he

was unable to establish a prima facie case of disability discrimination. (Id. at 140.)

The ALJ further found that, notwithstanding Hilinski's failure to demonstrate that he was an individual with a disability, the record also showed that USPS provided Hilinski with reasonable accommodations during the time period from May 1997 through September 19, 1999. (Id. at 141.)  These accommodations include (1) permitting Hilinski to use sick time when he was unable to work from May 1997 through April 1998, and (2) placing him in temporary, non-supervisory assignments outside of the 30th Street Office in accordance with the restrictions recommended by Hilinski's health care providers. (Id. at 141-42.)  Moreover, although Hilinski argued that the USPS should have provided him with a permanent assignment to a non-supervisory position at his same grade level outside of 30th Street Office, Hilinski offered no evidence to show that such a vacant position existed. (Id. at 142.)  Therefore, Hilinski failed to show that such an accommodation was even plausible in light of the "well settled" principal that "the Agency is not obligated under the Rehabilitation Act to create a new position as an accommodation." (Id.)

With respect to the events of September 10, 1999 and the manner in which Hilinski's retirement date was made effective, the ALJ found that such events may have reflected poor judgment and administrative error, but did not equate to unlawful discrimination based on race, sex, age, or disability. (Id. at 144-45.)  Hilinski did not present any evidence of discriminatory animus on the part of Ms. Scott, Ms. Cooper, or any other official responsible for the processing and notification of his disability retirement. (Id. at 145.)  Thus, the ALJ concluded that the USPS did not discriminate against Hilinski in handling his disability retirement.

Shortly after the USPS adopted the finding of "no discrimination" in its Final Agency

Decision, Hilinski appealed to the Office of Federal Operation ("OFO").  On April 29, 2000, the

OFO affirmed the findings below. (See EEOC Decision, at Def. Exhibit L.)  Shortly thereafter,

Hilinski filed the Complaint in the above-captioned case, which contains allegations of disability

discrimination in violation of the Rehabilitation Act.[2]

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case. Id. at 331. Once the

moving party satisfies this initial burden, the nonmoving party "must set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving

party must "do more than simply show that there is some metaphysical doubt as to material

facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

[2] Unlike Hilinski's EEOC Complaint, the Complaint before this Court does not contain
any allegations of race, sex, or age discrimination.

## III.  DISCUSSION

In the present motion for summary judgment, the Defendant makes two primary arguments.  First, the Defendant argues that Hilinski has failed to exhaust his administrative remedies as to all claims except the allegations of disability discrimination relating to (1) the events of September 10, 1999 and (2) the delayed processing of Hilinski's disability retirement application between January 1999 and September 1999.  In particular, the Defendant points out that EEOC regulations require aggrieved parties to seek EEO counseling within 45 days of the date on which any alleged discrimination occurs.  Here, the Defendant argues that because Hilinski only sought EEO counseling on September 10, 1999, any allegedly discriminatory acts occurring more than 45 days before that date have not been properly exhausted.  In addition, with respect to Hilinski's claim that he was denied a reasonable accommodation from 1995 to 1999, the Defendant notes that Hilinski never sought EEO counseling with respect to that claim, even though the ALJ gave him notice that he would have 45 days from the date of his Prehearing Statement to do so.  Therefore, the Defendant argues that the only claims properly before this Court are Hilinski's claims relating to the processing of his disability retirement application and the events of September 10, 1999.

Second, the Defendant argues that Hilinski cannot demonstrate a prima facie case of disability discrimination  To this end, Defendant asserts that Hilinski has not shown that he has a substantially limiting disability as defined by the Rehabilitation Act, and further that even if he did, he cannot establish the remaining prongs of a prima facie case, which require a showing that the plaintiff was qualified for the position(s) in question and that the plaintiff suffered an adverse employment action.

In his opposition papers, Hilinski raises several contrary arguments.  First, with respect to Defendant's failure to exhaust arguments, Hilinski contends that his EEOC Complaint contains a factual basis for claims of disability discrimination, failure to provide a reasonable accommodation, and retaliatory discharge.  That is, Hilinski asserts that the EEOC had timely notice of those allegations and should have expanded their investigation to include those claims.  Therefore, Hilinski claims that the Court is not precluded from taking a broad interpretation of Hilinski's Complaint even though the EEOC took a more narrow view.

Second, Hilinski claims that he can show a prima facie case of disability discrimination and retaliatory discharge.  He claims he has demonstrated that he has a substantially limiting disability and that the Defendant regarded him as being disabled.  He also argues that although he was qualified for available, permanent positions with the USPS, the Defendant did not select Hilinski for those positions because of his alleged disability.  As a result, Hilinski contends that the Defendant unlawfully discriminated against him by failing to provide a reasonable accommodation.  In addition, Hilinski claims that the Defendant retaliated against Hilinski for seeking a reasonable accommodation by "forcing" him into early retirement.  In other words, Hilinski argues that the Defendant gave him no choice but to apply for disability retirement when the Defendant refused to hire him into the permanent positions for which he applied in 1998.

The Court will address the exhaustion arguments before turning to the substantive merits of Hilinski's claims under the Rehabilitation Act.

**A.  Exhaustion of Administrative Remedies**

In a Title VII case, the plaintiff must exhaust available administrative remedies before filing suit in federal court. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).  The same

exhaustion requirements apply to cases brought under the Rehabilitation Act. Spence v. Straw, 54 F.3d 196, 201 (3d Cir. 1995). Timely exhaustion of remedies "requires both consultation with an agency counselor and filing a formal EEOC complaint within the required times." Robinson, 107 F.3d at 1021. Under current EEO regulations, a plaintiff must initiate contact with an EEO counselor within 45 days of the alleged discriminatory conduct. See 29 C.F.R. § 1614.105. The 45-day period should be extended only where the aggrieved person demonstrates that he or she was not aware of the time limitations or was prevented from timely contact despite due diligence. 29 C.F.R. § 1614.105(a)(2); see Johnson v. Gober, 83 Fed. Appx. 455, 460-61 (3d Cir. 2003) (affirming summary judgment for defendant employer where plaintiff failed to make contact with an EEO counselor within 45 days of the alleged discriminatory conduct and could not show any basis to excuse his untimeliness).

The exhaustion requirement serves several essential functions. In general, such requirements "provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999) (citing Robinson, 107 F.3d at 1020). In addition, the exhaustion rules encourage informal, conciliatory resolution of disputes, and therefore, can lessen the burden on federal courts. See Putill v. Harris, 658 F.2d 134, 138 (3d Cir. 1981); Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976). In a related way, the exhaustion procedures also provide the charged party with proper notice of the claims asserted against it so that it too has an opportunity to investigate the claims and seek a conciliatory resolution. See Glus v. G.C. Murphy, 562 F.2d 880, 888 (3d Cir. 1977). Moreover, requiring initial procedures at the administrative level allows the agency to "apply any special expertise it might possess, and

correct its own errors." Bethlehem Steel Corp. v. E.P.A., 669 F.2d 903, 907 (3d Cir. 1982).  In

light of these important functions, the exhaustion of administrative remedies requirement is not

to be disregarded. See Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152 (1982).

    That said, the time limitations for exhaustion deadlines in Title VII and Rehabilitation

Act cases are not jurisdictional in nature, but rather are similar to statutes of limitations and

subject to equitable modifications, such as waiver, estoppel, tolling, and the continuing violations

theory. See West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (citing Zipes v.

Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)); Rodriguez v. U.S. Postal Serv., No. 04-

916, 2005 WL 486610, at *4 n.8 (E.D. Pa. Mar. 1, 2005).  Equitable tolling may be appropriate

"(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of

action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or

her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong

forum." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

Similarly, equitable estoppel excuses a plaintiff's late filing that was caused by the defendant's

deception. See id. at 1389.  By contrast, the continuing violations theory provides that a plaintiff

may pursue a claim for discriminatory conduct that is time-barred if he or she can demonstrate

that the alleged discriminatory action is part of an ongoing practice or pattern of discrimination

by the defendant. West, 45 F.3d at 754.

    In addition to these equitable exceptions to certain exhaustion deadlines, the Third Circuit

also recognizes a slightly different kind of modification to the exhaustion requirement. See

Molthan v. Temple Univ., 778 F.2d 955, 960 (3d Cir. 1985); Howze v. Jones & Laughlin Steel

Corp., 750 F.2d 1208 (3d Cir. 1984); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984);

Ostapowicz, 541 F.2d at 398-99; Flesch v. Eastern Pennsylvania Psychiatric Inst., 434 F. Supp. 963, 970 (E.D. Pa. 1977).  This modification to the exhaustion requirement provides that allegations of discriminatory conduct that were not specifically alleged in the administrative proceedings may be properly asserted in the district court only if those allegations "can reasonably be expected to grow out of the initial charge of discrimination." See Ostapowicz, 541 F.2d at 398-99.  In other words, the proper inquiry to determine whether a plaintiff "has satisfied the administrative prerequisites to bring suit in federal court is whether the acts complained of were fairly within the scope of the EEOC complaint and the ensuing investigation." Parsons v. Philadelphia Coordinating Office of Drug & Abuse Programs, 822 F. Supp. 1181, 1184 (E.D. Pa. 1993) (citing Waiters, 729 F.2d 233, 237 (3d Cir. 1984); Ostapowicz, 541 F.2d at 398-99).

As mentioned above, the Defendant here argues that Hilinski has impermissibly failed to exhaust his administrative remedies with respect to all claims except those relating to the processing of his disability retirement and the events of September 10, 1999.  In contrast, Hilinski argues that the scope of Plaintiff's EEOC charge included "independent" but "related" claims of (1) disability discrimination, (2) failure to provide a reasonable accommodation, and (3) retaliatory discharge. (Pl. Opp. at 14.)  Therefore, the Court must determine which of these claims, if any, were either properly exhausted and/or subject to one of the exceptions to the exhaustion requirements.

### 1.  Miscellaneous Disability Discrimination Claims

Aside from the reasonable accommodation claim, Hilinski's brief does not specifically articulate what other "independent" but "related" claims of disability discrimination he claims to have exhausted. (See Pl. Opp. at 14.)  However, a liberal construction of Hilinski's district court

Complaint suggests that the following conduct forms the basis of Plaintiff's current disability

discrimination claims: (1) the events of May 7, 1997, when Hilinski was escorted by the postal

police; (2) the USPS' conduct related to Hilinski's workers' compensation hearing in 1997; (3)

the USPS' failure to hire Hilinski into certain positions in 1998; (4) the USPS' processing of

Hilinski's disability retirement application in September 1999; and (5) the events of September

10, 1999 that relate to the effective date of Plaintiff's disability retirement. (See Compl.)

 With respect to the claims regarding (1) the May 7, 1997 incident, (2) the Defendant's

conduct during Hilinski's workers' compensation hearing, and (3) the Defendant's failure to hire

Hilinski into certain positions in 1998, Hilinski failed to seek timely EEO counseling.  In this

matter, there is no genuine issue of material fact regarding the timing of Hilinski's EEO

counseling.  On the record before the Court, it appears that the only time Hilinski sought EEO

counseling was on September 10, 1999.  In the administrative proceedings below, the ALJ

recognized that allegedly discriminatory conduct dating back to 1997 and 1998 occurred more

than 45 days before September 10, 1999. (See Order of Partial Dismissal, at Def. Exhibit I.)

Moreover, the ALJ noted that the claims dating back to 1997 and 1998  were separate and

distinct from the other claims for which Hilinski had sought timely EEO counseling (i.e., the

claims relating to the processing of his disability retirement application and the events of

September 10, 1999). (Id.)  Simply put, the continuing violations theory did not excuse Hilinski's

failure to seek timely counseling for the claims arising out of the alleged discriminatory conduct

occurring in 1997 and 1998. See id.; see also West (noting that to be a continuing violation one

act must occur within the filing period and all acts must evidence a persistent, on-going pattern of

intentional discrimination). Accordingly, the ALJ dismissed the discrimination claims relating to

18

(1) the May 1997 incident, and (2) the non-selection of Plaintiff for positions in 1998 because Hilinski did not seek timely EEO counseling for them.[3]

In the briefing on the current motion, Hilinski does not present clear, supported arguments as to the timeliness issue with respect to his claims regarding the May 7, 1997 incident and the non-selection of Hilinski for positions with the USPS in 1998.  He states: "[t]he order of partial dismissal in finding that incidents that occurred in . . . May 1997 and 1998 were dissimilar from the incidents which the complainant raised in EEO counseling does not preclude those instances being used as evidence of discrimination and as background to support other circumstantial evidence that the defendant harbored an illegal motive." (Pl. Opp. at 21.)  Despite this conclusory assertion, Hilinski has not provided any argument or evidence to suggest that (1) he was not aware of the time limitations for seeking EEO counseling, or (2) that he was prevented from making timely contact despite due diligence, or that (3) he timely raised the claims mistakenly in the wrong forum. See Johnson, 83 Fed. Appx. at 460-61; Oshiver, 38 F.3d at 1387.

Likewise, Hilinski has not sufficiently demonstrated that the continuing violations theory should apply to the claims relating to conduct occurring in 1997 and 1998.  He has not demonstrated that those claims share a common subject matter or interrelatedness to the claims that were timely raised in the EEOC Complaint (i.e., the claims relating to the delayed processing of the disability retirement application and the events of September 10, 1999.). See West, 45 F.3d

---

[3]The ALJ also dismissed Hilinski's discrimination claim related to the alleged reversal of his management decisions from 1993 to 1997 on the same timeliness grounds.  However, that claim is not presented in Hilinski's Complaint before this Court.  Conversely, it appears that Hilinski's allegations regarding the workers' compensation hearing were not raised in the EEOC Complaint.

at 755, n.9 (citing Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th

Cir. 1983)).  To reiterate, the alleged discriminatory conduct dating back to 1997 and 1998

relates to: (1) a police escort after Plaintiff's comments apparently led his supervisor to believe

that he might be a danger to himself; (2) the USPS' conduct during Plaintiff's worker's

compensation hearing; and (3) the non-selection of Hilinski for certain positions in 1998.  By

contrast, the timely raised claims in the EEOC Complaint relate to the delayed processing of

Hilinski's disability retirement and the events of September 10, 1999, when his disability

retirement became effective.  There is no obvious interrelatedness between allegations relating to

a police escort, a worker's compensation hearing, and a failure to hire, on the one hand, and the

processing and notification procedures used to approve a disability retirement application, on the

other hand.  Moreover, there is no coherent analysis in Plaintiff's brief as to whether the claims

relating to the 1997 and 1998 actions had the requisite level of similarity, frequency, and/or

degree of permanence to justify a continuing violation. See Rush v. Scott Specialty Gases, Inc.,

113 F.3d 476, 482 (3d Cir.1997) (quoting Berry, 715 F.2d at 981).  Therefore, on the record

before the Court, it appears that a comparison of the alleged discriminatory acts from 1997, 1998,

and 1999 demonstrates that such acts were isolated or sporadic acts of alleged discrimination,

rather than related acts demonstrating a persistent pattern of discrimination indicative of a

continuing violation. West, 45 F.3d at 754-55.  In other words, Hilinski did not seek timely EEO

counseling as to the claims arising out of the allegedly discriminatory actions taken in 1997 and

1998, nor has he provided any valid reason as to why he failed to do so.

Instead, Hilinski argues that his claims for "disability discrimination" are within the scope

of his EEOC Complaint because they reasonably arise out of the allegations contained therein.

(See Pl. Opp. at 14.)  However, to the extent Hilinski attempts to use a "relation back" theory to excuse his failure to seek timely EEO counseling with respect to the claims dating back to 1997 and 1998, any such argument must fail.  The relation back doctrine provides that a district court may hear claims that were not specifically raised at the agency level if those new claims can be reasonably expected to grow out of the claims that were properly raised in the administrative proceedings. See Waiters, 729 F.2d at 237 (noting that courts permit "suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint").  Here, there is no prior EEOC Complaint to which those untimely claims could relate back.  In other words, the only EEOC Complaint that relates to the 1997 and 1998 claims is the one in which those claims were untimely raised and dismissed.  Therefore, the relation back doctrine does not prevent this Court from declining to hear those untimely claims on exhaustion grounds.

In sum, Hilinski has impermissibly failed to seek timely EEO counseling with respect to any discrimination claims regarding (1) the May 7, 1997 incident, (2) the USPS' conduct related to Plaintiff's worker's compensation hearing, and (3) the non-selection of Hilinski for positions with the USPS in 1998.  Accordingly, the Court will grant Defendant's motion for summary judgment as to those three claims.  See Word v. Potter, 149 Fed. Appx. 97, 100 (3d Cir. 2005) (finding plaintiff was barred from maintaining discrimination suit where plaintiff did not seek timely EEO counseling); O'Malley v. Potter, No. 05-986, 2005 WL 2340670, *3-4 (E.D. Pa. Sept. 19, 2005) (granting summary judgment against plaintiff because plaintiff did not seek timely EEO counseling); Weber v. Henderson, No. 99-2574, 2001 WL 91345, *4 (E.D. Pa. Jan. 31, 2001) (same); McGinty v. Snow, No. 04-1821, 2005 WL 696890, *2 (E.D. Pa. Mar. 23,

2005) (same).

2.  Reasonable Accommodation and Retaliatory Discharge Claims

In addition to the foregoing discrimination claims, Hilinski argues that this Court should

hear his claims for retaliatory discharge and the USPS' failure to accommodate his alleged

disability from 1995 to 1999.  Although the USPS argues that these claims were not properly

exhausted at the administrative level, Hilinski contends that his EEOC Complaint sets forth

factual allegations that give rise to both claims.

As mentioned previously, in a disability discrimination case like the present matter, "the

scope of the judicial complaint is limited to the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination."  Ostapowicz, 541 F.2d at

398-99; see Waiters, 729 F.2d at 237 (noting that the inquiry for the district court is whether the

acts complained of were "fairly within the scope of the EEOC complaint and the ensuing

investigation").  A new claim is usually said to reasonably grow out of an EEOC Complaint

when: (1) the claim arose during the pendency of the EEOC investigation, (2) the claim was

closely related to conduct alleged in the charge (such as a claim of retaliation for filing the

charge), or (3) the claim contained allegations that further explained the claims in the EEOC

charge. Sandom v. Travelers Mortg. Services, Inc., 752 F. Supp. 1240, 1246-1247 (D.N.J. 1990);

see e.g., Molthan v. Temple Univ., 778 F.2d 955, 960 (3d Cir. 1985) (finding that new claim that

the defendant retaliated against plaintiff for filing an EEOC Complaint was within the scope of

the original EEOC Complaint); Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208 (3d Cir.

1984) (finding that claim, in civil suit, that plaintiff was discriminated against because of her

involvement with a "Black Caucus" explained the original EEOC charge which alleged racial

discrimination in job promotion).

Hilinski's claim for failure to provide a reasonable accommodation cannot be reasonably expected to grow out of the claims that were properly raised in his EEOC Complaint. The only language in the EEOC Complaint that Hilinski cites in support of his reasonable accommodation claim is the language in the EEOC Complaint that says the USPS did not hire him for certain positions in 1998. (See Pl. Opp. at 19.) Indeed, upon review of the EEOC Complaint, this Court likewise cannot find any specific allegations, other than those relating to the non-selection of Hilinski for positions in 1998, that would give rise to, or provide notice of, a failure to accommodate claim relating to the period from 1995 to 1999. See Glus v. G.C. Murphy, 562 F.2d 880, 888 (3d Cir. 1977) (noting that one of the primary purposes of the exhaustion requirement is to provide notice to the charged party).[4]  However, as mentioned above, the ALJ

_____

[4]Moreover, when Hilinski first attempted to raise the claim that he was denied a reasonable accommodation from 1995 to 1999 in his Prehearing Statement before the EEOC, the ALJ specifically found that the reasonable accommodation claim was a new claim not raised in EEO Counseling or the EEOC Complaint. (Preconference Hearing Order, at Pl. Exhibit J.) Nevertheless, the ALJ gave Hilinski 45 days from the date of Hilinski's Prehearing Statement to seek EEO counseling with respect to this reasonable accommodation claim. (Id.) The claimant apparently never sought counseling, as there is no evidence in the record that he did. On these facts, it would be difficult to conclude that the Defendant had notice that the EEOC investigation would include Hilinski's failure to accommodate claim when the ALJ specifically issued an Order stating that the EEOC investigation would *not* include any such claim because the EEOC Complaint did not support it.

In his opposition papers, however, Hilinski claims that after the ALJ issued her Preconference Hearing Order, she then reversed her decision on the failure to accommodate claim during an off-the-record discussion at the administrative hearing. (Pl. Opp. at 10.) In that conference, the ALJ allegedly stated that the Defendant did have notice of the failure to accommodate claim and that the reasonable accommodations claim was "in." (Id.) In support of this contention, Hilinski cites to Exhibit N to his opposition; however, there is no document attached to the opposition papers at Exhibit N. Furthermore, Hilinski's allegations regarding the ALJ's alleged change of heart were made in the text of the opposition brief rather than in a sworn affidavit by an individual with personal knowledge. Therefore, there is no competent evidence in

dismissed the claims regarding the non-selection of Plaintiff for positions in 1998 because Hilinski did not seek timely EEO counseling with respect to those allegations. Therefore, it would be illogical to say that the EEOC investigation should have included the reasonable accommodation claim when the only grounds Hilinski can identify in the EEOC Complaint to support that claim were properly dismissed from the EEOC proceeding for untimeliness.  In other words, Hilinski appears to argue that his failure to accommodate claim reasonably arises out of allegations in the EEOC charge that were not properly before the EEOC in the first place. Therefore, the Court concludes that the reasonable accommodation claim is not properly raised in this action and will grant summary judgment in favor of the Defendant on Plaintiff's claim for failure to provide a reasonable accommodation between 1995 and 1999.

For similar reasons, the Court finds that Hilinski has not properly exhausted his administrative remedies with regard to his claim for retaliatory discharge.  As a preliminary matter, the Court notes that the words "retaliation" or "retaliatory discharge" do not appear anywhere in the Complaint filed in this Court. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").  Nevertheless, in Hilinski's opposition papers, he argues that the USPS constructively discharged Hilinski by forcing him to retire early in retaliation for Hilinski's

_____

the record confirming Hilinski's assertions regarding the off the record conference.

24

attempts to obtain a reasonable accommodation. (Pl. Opp. at 44.)  With respect to the contents of

the Plaintiff's charge of discrimination before the EEOC, it is clear that there is no explicit

reference to a retaliatory discharge anywhere in the EEOC Complaint or EEO Counseling report.

As to the circumstances surrounding Hilinski's retirement, the allegations in the EEOC

Complaint establish that Hilinski applied for disability retirement, the USPS granted that

application, and in the interim, the USPS provided Hilinski with a temporary placement. (See

EEOC Compl., at Def. Exhibit H.)  Furthermore, one of the primary contentions raised in the

EEOC Complaint is that the USPS did not process and approve Hilinski's disability retirement

fast enough, which is somewhat inconsistent with the Plaintiff's present claim that Hilinski's

disability retirement was some kind of adverse, retaliatory action.  Simply put, the allegations in

the EEOC Complaint could not be reasonably expected to give rise to a retaliatory discharge

claim.

   In addition, the retaliation claim that Hilinski attempts to raise here is different than the

kinds of retaliations claims that courts typically find to have " reasonably grown out of" an

EEOC Complaint. See e.g., Molthan., 778 F.2d at 959-60; Waiters, 729 F.2d at 237-38.  In most

circumstances, the plaintiff in the district court argues that the defendant took an adverse

employment action against the plaintiff in retaliation for the plaintiff's decision to file the

underlying EEOC Complaint.  In other words, the adverse action not only occurs after the

plaintiff files an EEOC Complaint, but the motivation for taking that action is to retaliate against

the plaintiff for filing the EEOC charge. See e.g., Molthan., 778 F.2d at 959-60; Waiters, 729

F.2d at 237-38.  Here, the alleged retaliatory discharge occurred before Hilinski filed his EEOC

Complaint, and thus, was not retaliation against Hilinski for filing an EEOC Complaint. See

<u>Waiters</u>, 729 F.2d at 237 (recognizing that the retaliation claim at issue related to *new* acts that occurred after the filing of the EEOC Complaint). Therefore, Hilinski's current retaliation claim is distinguishable from the kinds of retaliation claims that courts will typically consider in circumstances where the plaintiff did not raise retaliation as part of the EEOC Complaint.

Overall, the Court finds that Hilinski has not properly exhausted his administrative remedies with respect to his reasonable accommodation and retaliatory discharge claims. Therefore, the Court will grant Defendant's motion for summary judgment on those claims. However, even if Hilinski had properly exhausted his reasonable accommodation and retaliatory discharge claims, the following analysis demonstrates that he has not established a prima facie case of disability discrimination or retaliatory discharge.  Therefore, the Court will rely on the analysis of the merits of Hilinski's claims as an alternative grounds for granting Defendant's motion for summary judgment.

### B.  Merits of  Disability Discrimination Claims

The Rehabilitation Act is designed to protect the rights of disabled individuals. <u>Gaines v. Runyon</u>, 107 F.3d 1171, 1175 (6th Cir. 1997).  To that end, the statute authorizes suits for both disparate treatment based upon disability and a failure to provide a reasonable accommodation for disabled employees.  In particular, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

Claims for disparate treatment under the Rehabilitation Act are analyzed using the three-part burden shifting standard set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996).  The first step in that burden-shifting framework requires the Plaintiff to establish a prima facie claim of discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citing St. Mary's Center v. Hicks, 509 U.S. 502, 506 (1993)).  In turn, to state a prima facie claim of disparate treatment under the Rehabilitation Act, a plaintiff must show (1) he is a disabled person; (2) he was qualified for the position in question, with or without reasonable accommodation; and (3) he was the subject of an adverse employment action as a result of discrimination. Galle v. Dep't of Gen. Services, No. 02-4622, 2003 WL 21293795, at *4 (E.D. Pa. 2003) (citing Shaner v. Synthes, 204 F.3d 494, 540 (3d Cir. 2000)).

Likewise, a plaintiff must establish a similar set of elements to sustain a prima facie claim for failure to accommodate under the Rehabilitation Act. See Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229-30 (3d Cir. 2000) (addressing claim that employer failed to provide a reasonable accommodation which would have allowed plaintiff to continue working); Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996) (addressing claim that employer's failure to reassign plaintiff was a failure to provide a reasonable accommodation). Like the prima facie showing for disparate treatment claims, the prima facie elements of a failure to accommodate claim require the plaintiff to establish, by a preponderance of the evidence, that (1) he is a disabled person; (2) he was qualified for the position in question, with or without reasonable accommodation; and (3) he was the subject of an adverse employment action as a result of discrimination. Donahue, 224 F.3d at 229 (quoting Shiring, 90 F.3d at 831). In addition, however, the plaintiff must make a

27

showing that reasonable accommodation is possible. Id.  If the plaintiff meets these burdens, then the defendant bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable or would cause an undue hardship on the employer. Id.

In the present case, the Court has determined that the only properly exhausted claims are Hilinski's allegations relating to the processing of his disability retirement application and the events of September 10, 1999.  These claims appear to be more of a disparate treatment claim than a failure to accommodate claim because they contain allegations that Hilinski's disability retirement application was processed and made effective in a discriminatory manner.  However, because Hilinski has not demonstrated by a preponderance of the evidence that he was disabled or regarded as being disabled, he has failed, in any event, to establish a prima facie claim for either a disparate treatment or a reasonable accommodation claim.

Under the Rehabilitation Act, a "disability" is a physical and/or mental impairment that substantially limits one or more major life activities.  Toyota Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002); Greb v. Potter, 176 Fed. Appx. 260, 262 (3d Cir. 2006).  To be substantially limiting, an impairment must "prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives." Toyota, 534 U.S. at 198. Such activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Moreover, to prove a disability, the plaintiff must present evidence that "the limitation, in terms of her of her own experience, is substantial." Greb, 176 Fed. Appx. at 262 (citing Toyota, 534 U.S. at 198).  A

28

review of the evidence demonstrates that Hilinski has not met this standard.[5]

First, Hilinski submits several letters from his doctors which merely diagnose Hilinski with certain anxiety and stress disorders or merely conclude that he could return to work with the USPS as long as he did not work in the 30th Street location or in a supervisory position. (See 12/3/98 Letter at Pl. Exhibit DD; 3/2/98 & 1/20/99 Letters at Pl. Exhibit EE; 3/26/90 Letter at Pl. Exhibit FF). However, evidence that an impairment has been medically diagnosed is insufficient to establish a disability. Toyota, 534 U.S. at 198. In addition, the numerous medical findings that Hilinski could return to work in a number of jobs within the USPS tends to suggest that Hilinski's impairments were not as limiting as he now claims. See Marinelli v. City of Erie (Pa.), 216 F.3d 354, 364 (3d Cir. 2000) (noting that "an individual that is unable to perform a particular job for one employer or . . . is unable to perform a specialized job is not substantially limited in his ability to work").

Second, although Hilinski's deposition testimony and his wife's affidavit vaguely allege that Hilinski experienced irregular sleep patterns, irritability, difficulty managing his finances, and instances of becoming disoriented and preoccupied whenever he approached the 30th street location, Hilinski does not provide the Court with sufficient means to assess the severity or permanence of those symptoms. See Greb, 176 Fed. Appx. at 262-63 (noting that vague and unsupported assertions that plaintiff has trouble "bathing, dressing, reaching, lifting, sleeping, and maintaining personal hygiene without assistance" could not withstand summary judgment

---

[5]As an initial matter, the Court recognizes that some of the exhibits to Hilinski's over length brief have not been properly authenticated. See Fed. R. Evid. 901. However, as the following analysis demonstrates, even if the Court considers the documents Hilinski has submitted, they still fail to show that Hilinski was disabled or regarded as such.

where the plaintiff had not provided the district court with "any way to assess the severity of those limitations, such as testimony from a doctor").  Here, one of the medical reports states that, in February 1998, Hilinski complained of poor sleep, negative and depressive thoughts and some unspecified degree of difficulty concentrating. (See 1/20/99 Report, at Pl. Exhibit DD.) However, the report does not explain whether those symptoms led to a substantial limitation on Hilinski's major life activities.  Moreover, aside from that report, Hilinski relies primarily on his own vague assertions, as well as the unsupported allegations from his wife's affidavit, which partially relate to matters of which she did not have personal knowledge. (See Joann Hilinski Aff. at Pl. Exhibit GG.)  For these reasons, the Court finds that Hilinski has not presented sufficient evidence to show that he had an impairment that qualified as a disability under the Rehabilitation Act.

However, in the alternative, Hilinski argues that even if he was not disabled within the meaning of the statute, the USPS actually regarded him as such. See 29 C.F.R. § 1630.2(i). This argument must likewise fail.  First, contrary to Hilinski's assertions, the fact that Hilinski subsequently obtained disability retirement does not automatically mean that his employer previously regarded him as being disabled. See Ozlek v. Potter, Civ. No. 05-257, 2006 WL 964484, *2, *5 (E.D. Pa. Apr. 13, 2006) (finding that plaintiff did not demonstrate that USPS regarded him as being disabled even when his disability retirement application had been approved).  Moreover, the alleged fact that some of Hilinski's co-workers perceived him to be suicidal did not, without more, mean that the USPS thought he was disabled.  See Barcikowski v. Sun Microsystems, Inc., 420 F. Supp. 2d 1163, 1182-83 (D. Colo. 2006) (finding that plaintiff failed to raise a genuine issue of material fact as to whether the defendant regarded him as being

disabled where plaintiff alleged that the defendant considered him to be suicidal); <u>Pence v. Tenneco Automotive Operating Co., Inc.</u>, 2005 WL 999972, at *2 (W.D. Va. Apr. 26, 2005) (same).  Similarly, the Plaintiff's allegations that some USPS employees may have (1) inquired about Hilinski's mental status, or (2) considered his impairment to be severe, or (3) mistakenly thought that he was out on an extended leave of absence, demonstrate that they may have been aware of Hilinski's mental ailments, but not necessarily that they perceived him to be substantially limited in performing major life activities. <u>See</u> <u>Kelley v. Drexel Univ.</u>, 94 F.3d 102, 109 (3d Cir. 1996) ("[W]e hold that the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.").  To the contrary, the record demonstrates that the USPS considered Hilinski capable enough to return to work, and moreover, the USPS actually placed Hilinski in temporary positions which required him to think, concentrate, and interact with others. <u>See</u> White Dep. 28:19 to 29:3; <u>see also</u> <u>Endres v. Techneglas, Inc.</u>, 139 F. Supp. 2d 624, 636 (M.D. Pa. 2001) (finding that where defendant offered plaintiff an opportunity to return to the workplace, the defendant did not perceive the plaintiff to be disabled); <u>Gaul v. AT&T, Inc.</u>, 955 F. Supp. 346, 351 (D.N.J. 1997) (noting that employer's request that the plaintiff return to work on a special project indicated that the defendant did not perceive the plaintiff to be disabled).  Consequently, the Court concludes that, on the evidence presented, Hilinski has not satisfied his burden of showing that he was disabled or regarded as disabled by the USPS.  Accordingly, the Court will grant Defendant's motion for summary judgment on Hilinski's disparate treatment and reasonable accommodation claims.

### C.  Merits of Retaliatory Discharge Claims

Although the Complaint in this matter does not specifically allege retaliation, Hilinski's opposition papers contain allegations of retaliatory discharge.  In particular, Hilinski claims that, in retaliation for his "efforts to obtain a reasonable accommodation," the USPS constructively discharged him by forcing him to retire. (See Pl. Opp. at 44.)  Although the Court has determined that Hilinski did not properly exhaust his administrative remedies with respect to the retaliatory discharge allegations, the following analysis on the merits will serve as an alternative basis for the Court's decision to grant the Defendant's motion as to the retaliation claim.

To establish a valid claim for retaliatory discharge, a plaintiff must demonstrate that (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action at the same time or after the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's action. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000); Javil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).  Assuming arguendo that Hilinski's requests for accommodation are reasonable, and therefore, can be considered a protected activity, see Bivins v. Gonzales, No. 05-833, 2005 WL 2864746, at *4 (D. Md. Oct. 26, 2005) ("it is clear that a request for a reasonable accommodation is a protected activity under both the ADA and the Rehabilitation Act"), the Court finds that Hilinski has not met his burden with respect to the second and third elements of a prima facie claim of retaliatory discharge.

Hilinski argues that the USPS took an adverse employment action against him by forcing him to retire.  In essence, he argues that the USPS constructively discharged him.  The general standard for determining whether a constructive discharge exists is an objective test.  To satisfy

this test, a plaintiff pursuing a constructive discharge claim must show that "a reasonable jury could conclude that [the employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998).  This standard asks not whether the individual plaintiff subjectively felt compelled to resign, but rather, "whether he would have no choice but to resign." Id. at 976 (quoting Blistein v. St. John's College, 74 F.3d 1459 (4th Cir. 1996)); Gray v. York Newspapers, 957 F.2d 1070, 1083 (3d Cir. 1992) (internal citations omitted).  In the context of a forced retirement claim, this issue of voluntariness is the factor that distinguishes a discharge from a mere early retirement. Baker v. Consolidated Rail Corp., 835 F. Supp. 846, 852 (W.D. Pa. 1993) (citing Henn v. Nat'l Geographic Soc'y, 819 F.2d 824, 828 (7th Cir.1987)).  To be considered voluntary, the decision to retire must be "informed, free from fraud or misconduct, and made after due deliberation." Id.

In the present matter, Hilinski cannot meet this standard.  The record before the Court demonstrates that following the May 7, 1997 incident, the USPS allowed Hilinski to take 11 months of leave with full pay and benefits, with the hopes that he would return to work in his prior capacity. (See Hilinski Dep. 81:22 to 82:15; White Dep. 28:5 to 28:25.)  Upon his voluntary return to work at the USPS, the Defendant provided Hilinski with temporary placements for approximately a year and a half in an effort to accommodate his requests to avoid working in a supervisory position or in the 30th Street Post Office.  Due to budgetary restrictions, the temporary placement was to end in December 1998, and the USPS provided Hilinski with several options. (See White Dep.44:18 to 44:20; Hilinski Dep. 107:13 to 109 13.)  These options included (1) working in one of the available, non-supervisory or craft positions, in accordance

33

with Hilinski's limited ability to supervise employees; (2) taking additional leave without pay; or (3) applying for disability retirement. (Hilinski Dep. 107:13 to 109:3.)  After  weighing the options, Hilinski chose to apply for disability retirement. (Id. 109:6 to 109:13.). Thereafter, the USPS made the additional accommodation to extend his temporary placement with full pay and benefits until his disability retirement application was processed.  (Id. 109:24 to 110:11.)  On these facts, it seems clear that although Hilinski may have had a tough choice to make, he did not have "no choice but to resign." See Connors, 160 F.3d at 974; Gray,  957 F.2d at 1083. Moreover, Hilinski made an informed decision after due deliberation, and there is no evidence of any fraudulent behavior on behalf of USPS. See Henn, 819 F.2d 828-29.  Consequently, the Court finds that Hilinski has not met his burden of showing that his decision to apply for disability retirement constituted an adverse employment action in the form of a constructive discharge.[6]

In addition, Hilinski has not made a sufficient showing as to the causation requirement. In analyzing the causation prong, courts look to the temporal proximity between the protected activity and the alleged retaliatory action. Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003).  In some situations, the temporal proximity between the protected activity and alleged retaliatory action may be sufficient by itself to establish a causal link. Id. (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1996)).  However, to infer causation based upon temporal proximity only, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive." Id. at 189 n. 9 (quoting Krouse v. Am. Sterilizer Co.,

---

[6]  It is also worth noting that there may be some indirect tension or inconsistency between Hilinski's argument that his retirement was forced or adverse, on one hand, and his simultaneous allegation that his retirement application was not processed fast enough, on the other hand.

126 F.3d 494, 503 (3d Cir. 1997)) (internal quotation marks omitted).  In cases where the temporal proximity alone is not so close as to justify an inference of causation, the Court must look to "timing plus other evidence" to evaluate causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).  Such other evidence includes, but is not necessarily limited to, evidence of ongoing antagonism toward the Plaintiff by the Defendant and evidence that the Defendant gave inconsistent reasons for taking the allegedly retaliatory action. Id. at 280-81.  However, the Third Circuit has made clear that the causation inquiry is a generalized inquiry that is not necessarily limited to examining one particular factor or incident. Id.; Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 179 (3d Cir. 1997); Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

Here, the temporal proximity between Hilinski's requests for accommodation and his ultimate retirement are insufficient without more to establish a causal connection.  Hilinski first returned to work and requested accommodations in April 1998; however, he was not presented with the option to apply for disability retirement until many months later, and he ultimately did not retire until September 1999.  Because these events occurred over the span of many months, this is not the kind of case where temporal proximity is so close that it alone gives rise to an inference of causation. Compare Javil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (noting that two days between protected activity and alleged retaliatory act was sufficient to support causal link), with Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 759-61 (3d Cir. 2004) (finding that two month period between protected activity and alleged adverse

action insufficient to establish causation).

Therefore, the court must conduct a generalized inquiry into whether Hilinski's requests for accommodation after the May 1997 incident were the reason for some retaliatory action by the USPS. See Kachmar, 109 F.3d at 179.  In this case, the overall scenario reveals that the USPS provided Hilinski with accommodations that provided him full pay and benefits for many months throughout 1998; however, because of budgetary reasons, the USPS could not continue to do so. (See White Dep. 44:18 to 44:21.)  Nevertheless, the USPS agreed to extend Hilinski's temporary accommodations while Hilinski's disability retirement application was pending in 1999, and then granted his disability retirement request in September 1999. (See White Dep. 46:5 to 46:8; Hilinski Dep. 109:14 to 110:20.)  Here, Hilinski points out that he was not ultimately selected for a few permanent positions for which he applied in 1998.  However, the mere fact that he did not receive those particular positions does not, in light of the overall circumstances, reasonably suggest that the USPS was retaliating against Hilinski for submitting those job applications by (1) offering Hilinski various employment options (including applying for disability retirement), and (2) thereafter granting his retirement request.  Indeed, the record does not support the allegation that the USPS was generally antagonistic toward Hilinski or that his requests for accommodation somehow otherwise resulted in the USPS "forcing" him to retire.  Accordingly, the Court finds that Hilinski has not met his burden of showing by a preponderance of the evidence that his requests for accommodation caused the USPS to take any adverse action against him.

Altogether, because Hilinski has not met his burden with respect to the second and third prongs of a prima facie case of retaliation, the Court will grant the Defendant's motion for

summary judgment as to the Plaintiff's retaliatory discharge claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary

Judgment on all claims in Plaintiff's Complaint.  The accompanying Order shall issue today.


Dated:   September 1, 2006                              s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge